**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JEFFREY J. BROWN,

       Petitioner,

v.                                   Case No. 09-10852

BLAINE LAFLER,

       Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**
**AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY**

       Petitioner Jeffrey J. Brown, presently incarcerated at the Gus Harrison Correctional Facility in Adrian, Michigan, presents a *pro se* application seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his conviction for armed robbery,[1] possession of a firearm in the commission of a felony,[2] and being a fourth felony habitual offender.[3] For the reasons stated below, the petition for writ of habeas corpus will be denied.

## I.  BACKGROUND

       Petitioner was convicted in a bench trial conducted before Hon. David Kerwin in Wayne County, Michigan, Circuit Court. Testimony at trial revealed the following facts.

---

    [1]  Mich. Comp. Laws § 750.529.

    [2]  Mich. Comp. Laws § 750.227b.

    [3]  Mich. Comp. Laws §§ 769.12.

On December 1, 1998, about 9:25 p.m., Tony Attisha was closing his uncle's store in Detroit, Michigan, accompanied by Saher Hanna, another uncle. As Attisha was walking out to his car, two men jumped out from the side of a house that was across the street from the store and ordered Attisha and his uncle to get on the ground. Attisha testified that one of the men, whom he later identified as Petitioner, went through his pockets and hit him with a gun in the back of the head. Petitioner took personal items from Attisha, including money and credit cards. Petitioner then ordered Attisha to go back into the store to open the safe. Attisha testified that there was a store light in front that Petitioner ordered him to turn off, but when Attisha turned to give Petitioner the money from the safe, Attisha got "a good look" at Petitioner's face, which he also agreed could be characterized as "a glimpse." Attisha had not seen Petitioner before, but testified that Petitioner was only about two feet from him and that the lighting was good.

On December 4, 1998, Attisha was present at a photographic lineup in which he was not able to identify Petitioner. However, on December 10, 1998, Attisha identified Petitioner as his assailant at an in-person lineup. Attisha testified that as soon as he walked into the lineup room, he identified Petitioner as the suspect without any hesitation. Investigator John Patterson of the Detroit Police Department confirmed that Attisha immediately identified Petitioner as the perpetrator at the live lineup. Hanna, Attisha's uncle, testified to the events surrounding the robbery but was not able to positively identify either assailant.

Detroit Police Officer Patricia Ryan responded to the scene of the armed robbery. Upon her arrival, she spoke with Kenneth Fuller, who informed Ryan that Petitioner was

the man who had robbed Attisha.  Officer James Martin also responded to the robbery scene, and also spoke with Fuller.  Fuller told Martin that he recognized Attisha's assailant as a person who had the nickname "Macalaka," who was also known as Jeffrey Brown.  Officer Ryan said that Fuller had told her his name was Joseph Johnson, while to officer Martin Fuller gave his name as Fuller.

After several adjournments to obtain his presence at trial, Fuller testified that he was at the party store at the time of the robbery.  He saw Attisha being brought across the street to the party store by a man who ordered Attisha at gunpoint to open the store. The police arrived shortly thereafter and asked Fuller his name.  Fuller claimed that he gave his correct name to both responding officers and denied telling anyone his name was Joseph Johnson.  Fuller also denied telling the officers that Petitioner was the man who had robbed Attisha.  Fuller claimed that the police had been interviewing another man named Joseph Johnson who had told them what he had seen happen to Attisha. Fuller admitted that he knew Petitioner by the street name "Macalaka," but denied knowing that his real name was Jeffrey Brown.  Fuller identified Petitioner in court as the man he knows by the name "Macalaka."

The defense called Officer John Whitley as a witness.  Whitley said that he took statistical information from Petitioner after his arrest, and that in his report he noted Petitioner to be six feet, four inches tall, weighing 190 pounds.  Whitley said he did not note any protrusion of Petitioner's lower lip nor any thickness or other notable characteristics of his facial features.

The defense also called attorney Cynthia Czech, who testified that she represented Petitioner in the early stages of the case, particularly at the line-up which

was held on December 10, 1998, and thereafter until she was replaced by attorney Ray Richards. Czech testified that she did not believe that Petitioner's in-person lineup at police headquarters was fairly conducted. At that time, she took notes and made observations as to age, height, and weight of the participants in the line-up. Czech and Petitioner objected to the line-up and requested Detective Patterson to find other individuals who more closely resembled Petitioner. Specifically, Czech noted that one participant was 30 years old, was six feet and four inches tall, weighed 230 pounds, had a mustache, and was bald. Another participant was 18 years of age, was six feet tall, weighed 160 pounds, and had a slight beard and a lot of hair. Czech claimed that there was no resemblance between that participant and Petitioner. Czech filed a motion to suppress the identification but later withdrew the motion after discussing it with Petitioner. She and Petitioner determined that it would be better if the issue were reserved for trial. On cross-examination, Czech admitted that Petitioner was not the tallest, shortest, youngest, oldest, heaviest, or lightest participant in the lineup.

Petitioner was found guilty of the charges by the court. Petitioner's conviction was affirmed on appeal. *People v. Brown,* No. 222671 (Mich. Ct. k App. Oct. 23, 2001), *appeal denied*, 645 N.W.2d 659 (Mich. 2002).

Petitioner then filed a post-conviction motion for relief from judgment pursuant to M.C.R. 6.500, *et. seq.* The trial court denied the motion in part and granted an evidentiary hearing on Petitioner's ineffective assistance of counsel claim. *People v. Brown,* No. 98-14103 (3d Cir. Ct., Crim. Div., Aug. 25, 2004). A *Ginther* hearing[4] was

---

[4] *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973).

conducted on Petitioner's ineffective assistance of counsel claim on June 9 and August 1, 2006. Following the hearing, the trial court denied the remainder of Petitioner's post-conviction motion, finding that Petitioner was not entitled to relief on his ineffective assistance of counsel claim. *People v. Brown,* No. 98-14103 (3d Cir. Ct., Crim. Div., Apr. 4, 2007). The Michigan appellate courts denied Petitioner's post-conviction appeal. *People v. Brown,* No. 279952 (Mich. Ct. App. Feb. 20, 2008), *appeal denied*, 756 N.W.2d 56 (Mich. 2008).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Was Petitioner deprived of his liberty where both trial/appellate counsel's representation was ineffective where Petitioner was denied the effective assistance of counsel for failure to call an alibi witness?

II. Was Petitioner deprived of his liberty without due process of law where the Wayne County Circuit Court erred in its factual findings and its conclusions of law regarding Mr. Kenneth Fuller's recantation while abusing its discretion denying relief?

III. Was Petitioner deprived of his constitutional right to due process of law where the deprivation of his Sixth Amendment right to trial counsel was violated for failing to attack the prosecution's pre-trial identification procedure?

IV. Was Petitioner's constitutional right to due process violated due to the prosecution's failure to introduce sufficient evidence establishing guilt beyond a reasonable doubt?

## II.  STANDARD OF REVIEW

Petitioner is entitled to the writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court's decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphases in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable.' *Id.* at 409. "Avoiding these pitfalls does not require citation of [Supreme Court] cases—indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam opinion) (emphasis in original). Furthermore, "§ 2254(d) dictates a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted).

# III. DISCUSSION

## A. Motions for Summary Judgment and Default Judgment

Petitioner has filed a motion for summary judgment and a motion for default judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Sanders v. Freeman,* 221 F. 3d 846, 851 (6th Cir. 2000) (quoting Fed. R. Civ. Proc. 56(c)). The summary judgment rule applies to habeas proceedings. *Harris v. Stegall,* 157 F. Supp. 2d 743, 746 (E.D. Mich. 2001). However, a federal district court should not enter a summary judgment in a habeas case if the pleadings or papers present a genuine issue of fact. *United States ex. rel. Johnson v. De Robertis*, 718 F.2d 209, 211 (7th Cir. 1983). For the reasons stated below, Respondent's pleadings do not show that he is entitled to judgment as a matter of law.

This court is also without power to grant Petitioner a default judgment in this case, because a default judgment is unavailable in a habeas corpus proceeding under 28 U.S.C. § 2254. *See Alen v. Perini*, 424 F.2d 134, 138 (6th Cir. 1970); *Whitfield v. Martin,* 157 F.Supp.2d 758, 761 (E.D. Mich. 2001). Accordingly, the motion for default judgment is denied.

## B. Claims # 1 and # 3: Ineffective Assistance of Counsel

The court will consolidate Petitioner's ineffective assistance of counsel claims for clarity and efficiency. To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-pronged test.

*First,* the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, the defendant must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. *Second,* the defendant must show that such performance actually prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F.3d 602, 617 (6th Cir. 2005). A petitioner is not entitled to habeas relief on his ineffective assistance of counsel claim if the state court's rejection of the claim was a reasonable application of *Strickland. Phillips v. Bradshaw,* 607 F.3d 199, 216 (6th Cir. 2010) (citing *Williams v. Coyle*, 260 F.3d 684, 704 (6th Cir. 2010).

In his first claim, Petitioner contends that his trial counsel was ineffective for failing to call his fiancé as an alibi witness. Respondent contends that Petitioner's first claim is procedurally defaulted, because he raised it for the first time only in his post-conviction motion for relief from judgment and failed to show cause for failing to raise the issue in his appeal of right, as well as prejudice, as required by M.C.R. 6.508(D)(3). Petitioner claims that his appellate counsel was ineffective for failing to raise his claim in his appeal of right. Ineffective assistance of counsel may establish cause for procedural

8

default.  *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).  If Petitioner could show that he received ineffective assistance of appellate counsel that rose to the level of a Sixth Amendment violation, it would excuse his procedural default for failing to raise his claim on his direct appeal in the state courts.  *Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000).  Because the cause-and-prejudice inquiry for the procedural default issue merges with an analysis of the merits of Petitioner's defaulted claim, it would be clearer to consider the merit of the claim.  *See Cameron v. Birkett,* 348 F.Supp.2d 825, 836 (E.D. Mich. 2004).  Additionally, Petitioner could not have procedurally defaulted his ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim.  *See Guilmette v. Howes,* 624 F.3d 286, 291 (6th Cir. 2010); *see also Hicks v. Straub*, 377 F.3d 538, 558, n.17 (6th Cir. 2004).

Yurissan Carter-Brown, presently Petitioner's wife, testified at the *Ginther* hearing that at the time of the robbery she was engaged to Petitioner and that she and her thirteen-year-old daughter were residing with him.  (Tr. 8/1/2006, 29-30.)  Carter-Brown testified that Petitioner was at home with her when the offense occurred and that she had been ready and willing to testify at his trial.  Carter-Brown admitted that she and her daughter were being financially supported by Petitioner at the time.  Finally, Carter-Brown conceded that she never went to the police to inform them that Petitioner was with her at the time of the crime and that the first time she mentioned the alibi to anyone was just before trial.

Petitioner's trial counsel, Richards, talked with Carter-Brown the day before trial, and testified that it was obvious that Carter-Brown loved Petitioner.  Counsel thought

9

that Carter-Brown would be an "okay" witness, but not the strongest witness he would like to have testify. (Tr. 8/1/2006, 17.) Richards said that Carter-Brown had been "as nervous as any fiancé would be. She loved Mr. Brown. And my reservation was at the time that it was possible that that would come out. That, you know, the judge would see it. The judge might not believe her." (Tr. 8/1/2006, 17.) He testified that a number of factors went into his decision to not call Carter-Brown as a witness. Although Petitioner had earlier insisted on the alibi testimony, trial counsel testified that he persuaded Petitioner that the defense case was sufficient without it. Trial counsel recalled that he had a questionable physical description of the perpetrator given by Attisha, as well as recanting testimony from Fuller. Trial counsel thought the testimony was sufficient to gain an acquittal. Trial counsel also testified that he had seen alibi witnesses backfire and stated that it was often "dangerous to call them" to testify. (Tr. 8/1/2006, 23.)

In rejecting Petitioner's claim, the trial court ruled that Petitioner had failed to show that he was deprived of a substantial defense, noting that trial counsel had analyzed the case and believed that he had enough to establish reasonable doubt as to Petitioner's guilt without presenting Carter-Brown's testimony. The trial court believed that this decision was reasonable given that Carter-Brown was Petitioner's fiancé. *People v. Brown,* No. 98-14103, at *4 (3d Cir. Ct., Crim. Div., Apr. 4, 2007). The trial court further observed that "given Carter-Brown's inherent bias, the fact that she never mentioned the alibi until the eve of trial, and there was no corroboration for her story – failure to present her alibi was a reasonable trial strategy." *Id.,* at *4, n.5. The trial court concluded that Petitioner had not overcome the presumption that valid trial strategy motivated counsel's decision –and it was, indeed, a "decision," this court emphasizes,

not a "failure." There was no garden-variety negligence here of the kind that might be mistakenly gleaned from the unfortunately imprecise language used by the trial court.

*Id.* at *5:

> The failure to call Carter-Brown was based on the evidence admitted and trial counsel's analysis of her potential testimony and pitfalls of calling the woman who loved defendant to defend him. Given her inherent bias, there is no "reasonable probability" sufficient to undermine counsel's trial strategy or confidence in the verdict.
> *Id.* at *5.

The trial court further noted that:

> Carter-Brown had significant credibility problems. Given that she was defendant's fiancé at the time and admitted that he supported both she and her daughter. Moreover, Carter-Brown never went to the police and reported that they arrested the wrong person. The first time that she wanted to tell her version of events was at trial.
> *Id.* at *5, n.6.

The Wayne County Circuit Court's adjudication of Petitioner's claim was not an unreasonable application of clearly established federal law so as to entitle Petitioner to relief. Under *Strickland*, a court must presume that decisions by counsel as to whether to call or question witnesses are matters of trial strategy. *See Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir.2002). Here, Petitioner's counsel testified at the *Ginther* hearing that he decided not to call Carter-Brown as an alibi witness because he believed that she would not be the strongest witness, that she came across as nervous, and that the judge might not believe her in light of the fact that she was Petitioner's fiancé at the time and in love with him. Petitioner's counsel was not ineffective in deciding not to call Carter-Brown as a witness. Counsel was fully aware of her and knew how she would testify. Counsel also was able to assess how credible –or non-credible– she would be as a witness. The presumption that counsel's decision to omit her testimony was trial

11

strategy is fully supported in the facts. *See Cathron v. Jones,* 77 F.App'x 835, 841-42 (6th Cir. 2003).

Moreover, the trial court observed Carter-Brown testify at the *Ginther* hearing and did not find her testimony to be particularly credible. As noted above, she was Petitioner's fiancé at the time, she never went to the police to inform them that she could provide an alibi for Petitioner, she did not mention the alibi until the eve of trial, and there was no corroboration for her story. Federal courts must afford state court determinations of fact a presumption of correctness that can be overcome only by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). In this case, there is no clear and convincing evidence to reject the trial court's credibility finding regarding Petitioner's proposed alibi witness. *See, e.g., Fargo v. Phillips,* 58 F.App'x 603, 607 (6th Cir. 2003). Finally, as the trial court noted in rejecting Petitioner's claim, "the identification of the defendant as the culprit at trial was strong while the proposed alibi witness was weak." *People v. Brown,* No. 98-14103, at *4 (3d Cir. Ct., Crim. Div., Apr. 4, 2007). The victim in this case positively identified Petitioner as his assailant at a pre-trial live lineup and at trial. Two police officers testified that Kenneth Fuller identified Petitioner as Attisha's assailant shortly after the robbery. In light of the sound evidence of Petitioner's guilt, Petitioner was not prejudiced by counsel's decision to not present the alibi witness even if that decision were less than professionally responsible trial strategy. *See Bray v. Cason,* 375 F.App'x 466, 470-71 (6th Cir. 2010).

Petitioner claims that his case is identical to the case of *Poindexter v. Renico,* 301 F.App'x 522 (6th Cir. 2008), where the Sixth Circuit concluded that counsel had been ineffective for failing to investigate and to present two alibi witnesses, including the

12

defendant's girlfriend.  The facts in Petitioner's case are distinguishable from the facts in *Poindexter* (which in any event is unpublished, and not accorded precedential value, *Bell v. Johnson*, 308 F.3d 594, 611 (6th Cir. 2002)).

First, the defense attorney in *Poindexter* did not talk to the proposed alibi witnesses; here, Petitioner's counsel interviewed and was familiar with Petitioner's proposed alibi witness.

Second, the defense attorney in *Poindexter* based his decision not to call the alibi witnesses, and assessed their credibility based solely on the fact that they existed a close relationship between the defendant and the witnesses; here, Petitioner's attorney assessed the witness's credibility only after directly speaking with her, observing that she would likely appear nervous if she testified.  Moreover, as the trial court noted, her credibility suffered from her close personal relationship with Petitioner and because she never approached police to inform them of the alibi, waiting until the eve of trial.

Third, although the Sixth Circuit in *Poindexter* agreed with the district court's conclusion that trial counsel was mistaken in concluding that the jury would not find the alibi witnesses credible based on their close relationship with that petitioner, *see Poindexter,* 301 F.App'x at 529, other courts have held that a defense attorney's decision to avoid calling a defendant's family member or relative as an alibi witness was not objectively unreasonable, since family members have a natural inclination to protect, and perhaps strong motive to fabricate an alibi defense for, a defendant with whom there is such a close bond.  *See Pina v. Maloney,* 565 F.3d 48, 55-56 (1st Cir. 2009) (defense counsel's failure to call alibi witness was reasonable trial strategy where alibi witness was defendant's fiancé at time of trial and interested party)*; Ball v. United*

*States,* 271 F.App'x 880, 884 (11th Cir. 2008) (failure to call defendant's wife, brothers, and cousin as alibi witnesses not ineffective, since their "testimony would not have been particularly compelling and would have been subjected to vigorous impeachment")*; Ingrassia v. Armontrout,* 902 F.2d 1368, 1370-71 (8th Cir. 1990) (petitioner failed to demonstrate that counsel was ineffective when advising petitioner to plead guilty where counsel told petitioner that there was no merit in pursuing alibi since no one would believe brother, father, or wife); *United States ex. rel. Emerson v. Gramley,* 883 F.Supp. 225, 236-37 (N.D. Ill. 1995) (counsel not ineffective in failing to call petitioner's mother and ex-wife as alibi witnesses because they were "patently interested witnesses" who would have added little value to the case).  Moreover, Carter-Brown's failure to go to the police with Petitioner's alibi, when coupled with her close relationship with Petitioner, additionally supports a finding that counsel's decision to forgo having her testify as an alibi witness was reasonable.  *See Wright v. Vaughn*, 473 F.3d 85, 91 (3rd Cir. 2006).

Fourth, there was more than one alibi witness in *Poindexter,* as opposed to Petitioner's case, where as the trial court also noted, there was no evidence or witness to corroborate Carter-Brown's story.

Fifth, Carter-Brown's credibility has later been revealed as suspect because although she claimed in an affidavit that she did tell investigators that Petitioner was with her on the night of the crime, *see* Petitioner's Appendix J, Affidavit of Yurrissan Carter, at the *Ginther* hearing she admitted on cross-examination that she *never* went to the police to inform them that Petitioner was with her on the night in question.  (Tr. 8/1/2006, 35.)  This significant inconsistency between her affidavit and her testimony at the *Ginther* hearing further calls into question how credible she would have been had

14

she been called to testify at Petitioner's trial, and thus supports—albeit in retrospect—counsel's decision not to have Carter-Brown testify at trial.

Because Petitioner has failed to show that his trial counsel was ineffective in "failing" to present an alibi defense, Petitioner is unable to establish that appellate counsel was ineffective for failing to pursue this ineffective assistance of trial counsel claim on appeal. *See Johnson v. Smith,* 219 F.Supp.2d 871, 883 (E.D. Mich. 2002). Petitioner is not entitled to habeas relief on his first claim.

In his third claim, Petitioner contends that trial counsel was ineffective for failing to challenge the suggestiveness of the pre-trial identification procedure by requesting a pre-trial hearing. The record reflects that Petitioner's first counsel, Czech, in fact filed two motions challenging the identification procedure, but later withdrew those motions at a final conference in favor of challenging the identification at trial. Petitioner expressly agreed with this strategy at the time. (Tr. 3/19/1999, 3-4.) Petitioner's second counsel, Richards, cross-examined Attisha extensively about his identification of Petitioner, including his description of his assailant which differed in some details from Petitioner's actual appearance. Attisha admitted that he was unable to identify Petitioner at the photographic lineup. Attisha further conceded, in response to counsel's questions, that he only got a "glimpse" of his assailant. (Tr. 6/30/1999, 20-40.)

Counsel called as a defense witness Officer Whitley, who took Petitioner's personal information from him at the time of his arrest. Whitley testified that Petitioner indicated that he was six feet, four inches tall, and weighed 190 pounds. Whitley noted that Petitioner did not have a thick or large lip. (Tr. 7/20/1999, 9.) This differed from the

initial description that Attisha had given of his assailant being six feet tall, 180 pounds, with a large lower lip.

Petitioner's trial counsel also called Petitioner's former attorney, Czech, to testify that she did not believe that Petitioner had received a fair lineup at police headquarters when Attisha identified him, based upon the age, height, and weight of the participants in the line-up. Czech testified that she and Petitioner objected to the line-up and requested Detective Patterson to find other individuals who more closely resembled Petitioner, noting that two participants bore little resemblance to Petitioner. She confirmed that she filed a motion to suppress the identification, but withdrew the motion after discussing this matter with Petitioner and determined that it would be better if the issue was presented at trial. Czech admitted on cross-examination, however, that Petitioner was not the tallest, shortest, youngest, oldest, heaviest, or lightest participant in the lineup. (Tr. 7/20/1999, 12-20). In his closing argument, counsel extensively challenged the reliability of Attisha's identification of Petitioner as being his assailant. (Tr. 7/20/1999, 26-29.)

In the present case, trial counsel did, in fact, challenge the reliability of the identification procedure at trial by cross-examining Attisha about his identification and description of the perpetrator, by calling Whitley to testify that Petitioner's physical characteristics differed from the description of the suspect given by Attisha, and by calling Czech to testify that she believed that the live line-up had been unfair and that the participants did not resemble Petitioner. The decision to attack the credibility of the victim's identification of Petitioner through the examination of witnesses at trial, rather than by filing a pre-trial motion to challenge the suggestiveness of the identification

procedure, was a reasonable trial strategy. This is true especially in view of the fact that the trial was to the bench, before a judge as fact-finder who would be exposed to the manner and means of the lineup whether it were presented in the form of a pre-trial motion or an in-trial exposition. Petitioner's ineffective assistance of counsel claim is unavailing. *See Millender v. Adams,* 187 F.Supp.2d 852, 868 (E.D. Mich. 2002); *Monroe v. Stegall,* 197 F.Supp.2d 753, 760 (E.D. Mich. 2001) (citing to *Killebrew v. Endicott*, 992 F.2d 660, 665 (7th Cir. 1993)). Petitioner is not entitled to habeas relief on his third claim.

### C. Claim # 2: Recantation

Petitioner next contends that he is entitled to habeas relief because he has newly discovered evidence in the form of an alleged recantation from Kenneth Fuller. Fuller signed an affidavit, dated August 22, 2001, which Petitioner presented to the Michigan courts in his motion for relief from judgment. (*See* Pet. App'x I.) In his affidavit, Fuller claims that he wrongly identified Petitioner as the person who had robbed Attisha on December 1, 1998. Fuller claims that he falsely implicated Petitioner because the two men had an altercation over a woman three days prior to the robbery. Fuller also claims that Attisha had offered him $100 at the time of the robbery if he told Attisha who had committed the robbery. Fuller purportedly told Attisha that "it looked like that nigga Mackalaka," then gave him a description. Fuller claims that he then told the police that Petitioner was the perpetrator so that he "could get the girl and make a quick hundred dollars." Fuller now states in his affidavit that he gave the police the false name of Joseph Johnson and that no one else was present that night. Fuller somewhat

inconsistently claims in the affidavit that it was the police who made up false information in the police statement and that he signed only one page of the statement because the police had "made up most of it." Fuller notes that he testified at trial that he did not know who was at the crime scene on the night in question. Petitioner claims that Fuller's recantation establishes his innocence of the crime.

In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that claims of actual innocence based on newly discovered evidence fail to state a claim for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the constitution, not to correct errors of fact. *Id.* Freestanding claims of actual innocence are not cognizable on federal habeas review, absent independent allegations of constitutional error at trial. *See Cress v. Palmer,* 484 F.3d 844, 854-55 (6th Cir. 2007) (collecting cases).

An affidavit like Fuller's, delayed by more than two years from the time of the crime and which seeks to exonerate Petitioner and shift the blame for the crime to another person, must be "treated with a fair degree of skepticism." *Herrera,* 506 U.S. at 423. Recanting affidavits and witnesses are likewise viewed with "extreme suspicion." *United States v. Chambers*, 944 F.2d 1253, 1264 (6th Cir. 1991); *see also Byrd v. Collins,* 209 F.3d 486, 508, n.16 (6th Cir. 2000). Furthermore, in determining whether a habeas petitioner has satisfied the miscarriage of justice standard so as to be permitted to file a successive habeas petition, a federal court "may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence." *Schlup v. Delo,* 513 U.S. 298, 332 (1995).

18

In addition to starting any such examination with "a fair degree of skepticism," there are a number of problems to be observed with Fuller's purported recantation.

First, as the trial court noted in rejecting Petitioner's claim Fuller had already recanted his identification of Petitioner as the assailant at Petitioner's trial. *People v. Brown,* No. 98-14103, *3-4 (3d Cir. Ct., Crim. Div., Aug. 25, 2004). Fuller's affidavit is therefore not actually a recantation of his trial testimony but only of the information that he had originally given the police. The judge at Petitioner's trial had already rejected Fuller's original recantation of his identification at the time of trial and had found the police testimony about his identification to be more credible. It was well within the trial judge's role as factfinder to give more credit to the police officers' testimony that Fuller had identified Petitioner as the perpetrator than to credit Fuller's conflicting recantation at trial. *See Stinchfield v. Menifee*, 119 F.Supp.2d 381, 385 (S.D.N.Y. 2000) (rational to credit police report over subsequent conflicting recantation).

Second, to the extent that this new "recantation" would somehow call into question the validity of Fuller's identification of Petitioner on the night of the robbery, the purported affidavit does not offer any convincing explanation as to why Fuller waited over two years to offer this new recantation of his identification of Petitioner to the police. *See Lewis v. Smith,* 100 F.App'x 351, 355 (6th Cir. 2004) (proper for district court to reject as suspicious a witness' recanting affidavit made two years after petitioner's trial); *see also Strayhorn v. Booker,* 718 F.Supp.2d 846, 874 (E.D. Mich. 2010) (long-delayed affidavit of accomplice recanting statement to police did not establish petitioner's actual innocence where it was made almost two years after petitioner's trial). Therefore, Petitioner is not entitled to habeas relief on his second

claim. Even if a recanting affidavit provides many intriguing details and exhibits internally consistency, as does Fuller's, and expresses a plausible story line, as does Fuller's, and ostensibly proffers a statement against penal interest, as does Fuller's, when it is provided *years* after the fact, with all the opportunity those years provide to mold the affidavit's details with other irrefutable evidence as it has subsequently become known, is to be viewed with such a lethal dose of scepticism as to render it useless.[5]

### D. Claim # 4: Sufficiency of the Evidence

Petitioner lastly contends that the evidence was insufficient to convict him of the crimes of armed robbery and felony-firearm because conviction, because the testimony of the victim and Fuller was unreliable and incredible. In reviewing a habeas petitioner's claim that the evidence was insufficient to convict him, a federal court is "bound by two layers of deference to groups who might view facts differently than" the court would. *Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009). First, as in all sufficiency of evidence challenges, a court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In doing so, the court does not reweigh the evidence or substitute its judgment for that of the finder of fact. *Id.* (*citing United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993)). Therefore, even if a federal habeas

---

[5] Or, to paraphrase Dorothy Parker, an affidavit such as this is not to be tossed aside lightly; it is to be thrown with great force.

court might not have convicted the defendant had it been the factfinder in the state court, it must uphold the verdict if any rational trier of fact could have found the defendant guilty after resolving all factual disputes in favor of the prosecution. Second, even if a federal court reviewing a habeas petition concludes that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, the court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Brown,* 567 F. 3d at 205; *see also Tucker v. Palmer,* 541 F.3d 652, 666 (6th Cir. 2008) (citing 28 U.S.C. § 2254(d)(1)).

On habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992). A habeas court must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir.2003). The Court does not apply the reasonable doubt standard when determining the sufficiency of evidence on habeas review. *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995).

Petitioner is not entitled to habeas relief. Attacks on witness credibility are simply challenges to the quality of the prosecution's evidence, and not to the sufficiency of the evidence. *Martin v. Mitchell,* 280 F.3d 594, 618 (6th Cir. 2002) (internal citation omitted). An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker*, 231 F.3d 265,

286 (6th Cir. 2000). The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. *Id.*

In the present case, Attisha's testimony, if believed, was alone sufficient to establish that Petitioner robbed him at gunpoint. "[T]he testimony of a single, uncorroborated prosecuting witness or other eyewitness is generally sufficient to support a conviction." *Brown v. Davis,* 752 F.2d 1142, 1144 (6th Cir. 1985) (internal citations omitted). Moreover, Attisha's identification of Petitioner as his assailant was corroborated by Fuller, who identified Petitioner to the police at the crime scene as being the perpetrator of the crime. "[E]xtrajudicial witness identifications are routinely used as substantive evidence of guilt." *Foxworth v. St. Amand*, 570 F.3d 414, 427 (1st Cir. 2009), *cert. denied*, 130 S. Ct. 1710 (2010) (citing *Samuels v. Mann*, 13 F.3d 522, 527 (2d Cir.1993) and Fed. R. Evid. 801(d)(1)(C)). Moreover, the fact that Fuller did not identify Petitioner in court would not render the evidence insufficient to convict Petitioner. "There is no requirement, either in the Constitution or in the usual rules that apply to the admission of evidence, that a witness who makes an extrajudicial identification of a criminal defendant must repeat the identification in the courtroom." *Foxworth,* 570 F.3d at 427; *see also Bugh v. Mitchell,* 329 F.3d 496, 505-11 (6th Cir. 2003) (upholding the admission of out-of-court statements of a minor victim which were admitted under Ohio Evid. R 801(d)(1)(C) as a prior identification of petitioner, even though victim was unwilling to testify about the statements at trial and did not remember making them).

Because Petitioner's insufficiency of evidence claim rests completely upon an allegation of witness credibility, the province of the fact finder, Petitioner has not

provided a ground upon which he is entitled to habeas relief.  *See Tyler v. Mitchell,* 416 F.3d 500, 505 (6th Cir. 2005).

### E.  Certificate of Appealability

A district court, in its discretion, may decide whether to issue a certificate of appealability ("COA") at the time the court rules on a petition for a writ of habeas corpus, or it may wait until a notice of appeal is filed to make such a determination.  *Castro v. United States,* 310 F.3d 900, 903 (6th Cir. 2002).  In deciding to deny the habeas petition, the court has, of course, studied the case record and the relevant law and concludes that it is presently well positioned to decide whether to issue a COA.  *See Id.* at 901-02 ("[Because] 'a district judge who has just denied a habeas petition . . . will have an intimate knowledge of both the record and the relevant law,'" the district judge is, at that point, often best able to determine whether to issue the COA.) (quoting *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1072 (6th Cir. 1997), *overruled on other grounds by Lindh v. Murphy*, 521 U.S. 320 (1997)).

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted).  In this case, the court concludes that reasonable jurists would not debate the court's conclusion that the petition does not present any claims sufficient to grant the petition for habeas corpus.  Therefore, the court will deny a certificate of appealability.

**IV. CONCLUSION**

Petitioner has not established that he is in the State of Michigan custody in violation of the Constitution or laws of the United States. Accordingly,

IT IS ORDERED that the "Petition for Writ of Habeas Corpus" [Dkt. # 1] is DENIED.

IT IS FURTHER ORDERED that the motions for summary judgment and for default judgment [Dkt. ## 12, 15] are DENIED.

IT IS FURTHER ORDERED that the court DECLINES to issue a certificate of appealability.

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: December 14, 2010

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, December 14, 2010, by electronic and/or ordinary mail.

s/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522